O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE ADVISORY COMMITTEE; CALIFORNIANS FOR RENEWABLE ENERGY; ALFREDO ACOSTA FIGUEROA; PHILLIP SMITH; PATRACIA FIGUEROA; RONALD VAN FLEET; and CATHERINE OHRIN-GREIPP,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, KEN SALAZAR, in his official capacity as Secretary of the Interior; UNITED STATES BUREAU OF LAND MANAGEMENT; ROBERT ABBEY, in his official capacity as Director, Bureau of Land Management; TERI RAML, in her official capacity as District Manager, Bureau of Land Management, California Desert Division; ROXIE TROST, in her official capacity as Field Manager, Bureau of Land Management, Barstow Field Office of the United States Bureau of Land Management, and CHEVRON ENERGY SOLUTIONS,<br><br>Defendants. | Case No. CV 11-00395 ODW (OPx)<br><br>Order **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion to Dismiss [25] [Filed 06/07/11] |

1

## I. INTRODUCTION

Pending before the Court is Defendants, Ken Salazar, in his official capacity as Secretary of the Interior; United States Bureau of Land Management; Robert Abbey, in his official capacity as Director, Bureau of Land Management; Teri Raml, in her official capacity as District Manager, Bureau of Land Management, California Desert Division; Roxie Trost, in her official capacity as Field Manager, Bureau of Land Management, Barstow Field Office, and the United States Department of the Interior's (collectively, "Federal Defendants") Motion to Dismiss Plaintiffs' Compliant pursuant to both Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Dkt. No. 25.) On July 20, 2011, Defendant, Chevron Energy Solutions ("Chevron" and collectively with Federal Defendants, "Defendants"), joined in Federal Defendants' Motion to Dismiss. (Dkt. No. 31.)

Subsequently, Plaintiffs, La Cuna De Aztlan Sacred Sites Protection Circle Advisory Committee ("La Cuna"); Californians for Renewable Energy ("CARE") (collectively, the "Organizational Plaintiffs"); Alfredo Acosta Figueroa; Phillip Smith; Patricia Figueroa; Ronald Van Fleet; and Catherine Ohrin-Greipp (collectively, "Individual Plaintiffs" and collectively with Organizational Plaintiffs, "Plaintiffs") filed an Opposition on August 22, 2011, to which Federal Defendants filed a Reply on August 29, 2011. (Dkt. Nos. 32, 34.)

Having considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED in Part** and **DENIED in Part** and Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED** without prejudice.

## II. BACKGROUND

This lawsuit arises out of Plaintiffs' challenges to Defendants' actions in connection with a solar-electricity generation project called the *Chevron Energy Solutions Lucerne Solar Project* (the "Project"). (Compl. ¶ 7.) Because the Project is located on

federal land, Chevron was required to obtain certain approvals from the Bureau of Land Management ("BLM") prior to constructing and operating the Project.

In October 2010, Federal Defendants granted the requisite approval, which included an amendment to the existing California Desert Conservation Area ("CDCA") Plan and right-of-way authorization. (Compl. ¶ 7A.) Plaintiffs allege that, in so doing, Defendants failed to comply with several federal laws. Specifically, Plaintiffs allege that Federal Defendants: (1) failed to consult with Plaintiffs regarding the Project as required under the National Historic Perseveration Act ("NHPA"); (2) failed to "conduct an adequate analysis of the cumulative impacts, failed to prepare a programmatic environmental impact statement, failed to adequately identify and evaluate the significance of the affected cultural environment, and failed to conduct an adequate analysis of alternatives to the Project" in violation of the National Environmental Policy Act ("NEPA"); (3) failed to prepare a programmatic environmental impact statement for the Project in violation of NEPA; and (4) allowed permanent impairment of the lands affected by the Project and unnecessary degradation of the lands in violation of the Federal Land Policy and Management Act of 1976 ("FLPMA"). (Compl. ¶ 8A-D.) Additionally, Plaintiffs assert that approval of the Project will result in "the intentional excavation, disposal, or other removal of Native American cultural items (including human remains) known to be or strongly suspected of being on the Project's site," in violation of the Native American Graves Protection and Repatriation Act ("NAGPRA").[1] (Compl. ¶ 8E.)

As a result of the foregoing, on January 13, 2011, Plaintiffs filed a Complaint in this Court against Defendants. Defendants now seek to dismiss Plaintiffs' Complaint in its entirety pursuant to both Rule 12(b)(1) and Rule 12(b)(6). The main thrust of Defendants' 12(b)(1) Motion is that Plaintiffs lack standing to maintain this suit.

Individual Plaintiffs, however, argue that they have standing because they "reside in the areas affecting [sic] by the actions challenged in this lawsuit and have an interest

---

[1] In their Opposition, Plaintiffs state that they "are amenable to dismissing the fifth claim without prejudice." Thus, the Court hereby **DISMISSES without prejudice** Plaintiffs' fifth claim for violation of the NAGPRA.

in the responsible development of renewable energy and in the preservation of and respect for Native American culture." (Compl. ¶ 3.) Further, Individual Plaintiffs purport to attach religious and cultural significance to the affected land, in which they allegedly reside. (Compl. ¶ 16.) La Cuna, an organization dedicated to protecting sacred sites from Needles, California to Yuma, Arizona, (Compl. ¶ 1), contends that it has standing because it is "comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites . . . ." (Compl.¶ 1.) Finally, CARE asserts that it has standing because it is "a non-profit organization formed to promote public education concerning the responsible development of renewable energy and in the preservation of an respect for Native American culture." (Compl. ¶ 2.)

The Court addresses the parties' arguments below.

### III.  DISCUSSION

Because "[f]ederal courts must determine they have jurisdiction before proceeding to the merits[,]" *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citations omitted), the Court first addresses Defendants' Motion to Dismiss pursuant to Rule 12(b)(1).

### A.  LEGAL STANDARD

On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that subject matter jurisdiction is proper. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010) ("The party asserting federal jurisdiction has the burden of establishing it."). The nature of the plaintiff's burden, however, depends on whether the Rule 12(b)(1) motion raises a facial or a factual challenge to the court's subject matter jurisdiction. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

In the context of a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this situation, the court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Conversely, in the context of a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In this instance, the "court need not presume the truthfulness of the plaintiff's allegations[,]" but may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (quoting *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Here, Defendants challenge Plaintiffs' ability to satisfy standing, an indisputable component of subject matter jurisdiction. *See Maya v. Centex Corp.*, --- F.3d ----, 2011 WL 4381864 at *3 (9th Cir. 2011) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)) ("'[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.'"). Specifically, Defendants raise a facial attack with respect to the entire Complaint, claiming that Plaintiffs allege "only generalized grievances" and fail to "meet the injury in fact requirement." (Mot. at 7.) Additionally, Defendants attempt to raise a factual attack with respect to claims one and five, asserting that "none of the Plaintiffs are a federally recognized tribe and therefore lack standing[.]" (Mot. at 7-8.) Defendants, however, fail to support this contention with evidence. Indeed, NHPA provides that "Indian tribes" satisfying certain eligibility requirements may be included on a National Register. 16 U.S.C. § 470a(6)(A). Defendants do not provide the Court with the National Register or any other information to this effect. Moreover, claim five has been dismissed. Thus, for purposes of the instant Motion, the Court construes Defendants' attacks as facial challengers, accepts Plaintiffs allegations as true, and construes them in the light most favorable to Plaintiffs. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### B. STANDARDS GOVERNING THE DOCTRINE OF STANDING

The Constitution limits the power of Federal Courts to actual "Cases" or "Controversies." U.S. Const. art. III, § 2. The doctrine of standing serves to set "apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III"

and thereby, identifies "those disputes which are appropriately resolved through the judicial process[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). While some elements of standing "express merely prudential considerations . . . , the core component of standing is an essential and unchanging part of the case-or-controversy requirement." *Id.*

### 1. Standing for Individual Plaintiffs

As applied to individual plaintiffs, the "irreducible constitutional minimum of standing contains three elements." *Id.* First, an individual plaintiff must present an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations omitted). The injury in fact test "requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 734-735.

"In determining whether a plaintiff has demonstrated an injury in fact, courts apply different tests depending on whether the alleged injury is procedural or substantive." *Nat'l Wildlife Fed'n v. Johanns*, No. C04-2169Z, 2005 WL 1189583 at *5 (W.D. Wash. May 19, 2005) (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 n.3 (9th Cir. 2001)). A procedural injury "results from the violation of a statute that guarantees a particular *procedure*, while substantive injury results from the violation of a statute that guarantees a particular *result*." *Id.* (citing *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 930 n.14 (9th Cir. 2000).

Where "[a]n individual bring[s] a substantive claim related to environmental harms[,]" injury in fact may be established "by showing 'a connection to the area of concern sufficient to make credible the connection that the person's life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded.'" *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 484 (9th Cir. 2011) (quoting *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000)). Standing in this context has been established in cases where plaintiffs have

"enjoyed photographing marine life, fishing, and watching marine life in the area potentially affected by the challenged government action . . . [or] regularly used and enjoyed an area inhabited by [an] imperiled species." *Id.* (citing *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859–60 (9th Cir. 2005); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995)).

In contrast, "a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *W. Watersheds*, 632 F.3d at 485 (quoting *Citizens for Better Forestry v. U.S. Dep't of Agriculture*, 341 F.3d 961, 969 (9th Cir. 2003)). This entails a showing that (1) "the defendant violated certain procedural rules;" (2) "these rules protect [the] plaintiff['s] concrete interests;" and (3) "it is reasonably probable that the challenged action will threaten the[se] concrete interests." *Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969-970 (9th Cir. 2003). A concrete interest requires "a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *Id.* at 971.

Second, there must be a causal connection between the alleged injury and the defendant's conduct. *Id.* Such an injury must be "fairly traceable" to the defendant's challenged action and "not the result of the independent action of some third party not before the court." *Id.* Third, it must be likely –not merely speculative – that the injury will be "redressed by a favorable decision." *Id.*

### 2. Standing for Organizational Plaintiffs

An organizational plaintiff may assert standing in two distinct capacities: (1) on behalf of the organization itself, or (2) on behalf of the members of the organization. Where, as here, an organizational plaintiff is suing on behalf of its members, the organization must sufficiently plead that: (1) at least one of its members would otherwise have standing to sue in his or her own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482-83 (9th Cir. 2011). With respect to the first element, an "organization asserting standing must provide 'specific allegations establishing that

7

at least one identified member has suffered or would suffer harm,' and 'generalized harm will not alone support standing." *Id.* (internal citations omitted).

Against this backdrop and in the context of Defendants' 12(b)(1) Motion, the Court analyzes the Individual Plaintiffs' standing, then the Organizational Plaintiffs' standing.

### C. THE INDIVIDUAL PLAINTIFFS' STANDING

As a preliminary matter, the Individual Plaintiffs, Alfredo Acosta Figueroa, Phillip Smith, Patricia Figueroa, Ronald Van Fleet, and Catherine Ohrin-Greipp, are not differentiated from each other in the Complaint. (Compl. ¶ 3.) Therefore, the Court analyzes their standing collectively, first discussing Plaintiffs' alleged procedural injury under NHPA and NEPA with respect to claims one, two, and three; and then their a alleged substantive injury under FLPMA with respect to claim four.[2]

#### 1. Individual Plaintiffs Properly Allege Standing to Maintain Their NHPA and NEPA Claims[3]

Plaintiffs contend that Defendants failed to consult with Plaintiffs regarding the Project as required under NHPA. Additionally, Plaintiffs maintain that Defendants failed to, *inter alia*, conduct adequate analyses, prepare a programmatic environmental impact statement, and identify and evaluate the significance of the affected cultural environment in violation of NEPA. At this stage of the litigation, these allegations are sufficiently pleaded with respect to the first element of a procedural injury – that Defendants violated procedural rules.

---

[2] Because claim five under NAGPRA has been dismissed, the Court does not address Plaintiffs' standing to bring this claim.

[3] Defendants do not raise the prudential standing argument of whether Plaintiffs' alleged injuries fall outside the "zone of interests" under the statutes at issue. Nevertheless, because the Court must independently assess its jurisdiction, it determines that Plaintiffs' alleged injuries fall squarely within the zones of interest under NHPA, NEPA, and FLPMA, which require, *inter alia*, consultation with any Indian tribe or Native Hawaiian organization that attaches religious and cultural significance to certain properties covered by NHPA prior to taking action, *see* 16 U.S.C. § 470a, consideration of the "environmental consequences of . . . planned [agency] action . . . and the well-being of the affected land not be threatened[,]" *W. Watersheds*, 632 F.3d at 486, as well as that "public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values[,]" *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1179 (9th Cir. 2000).

8

While Defendants argue that Plaintiffs fail to establish concrete or immediate "plans to visit or frequent the Lucerne Valley Project site[,]" (Mot. at 9), Individual Plaintiffs allege that they "reside in the areas affecting [sic] by the actions challenged in this lawsuit and have an interest in the responsible development of renewable energy and in the preservation of and respect for Native American culture." (Compl. ¶ 3.) Further, Individual Plaintiffs purport to attach religious and cultural significance to the affected land, in which they allegedly reside. (Compl. ¶ 16.) Coupled with the abovementioned interests, that the Individual Plaintiffs allegedly reside in the affected areas, is sufficient at this stage of the litigation to establish the requisite concrete interest – "a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *Citizens,* 341 F.3d at 971.

Finally, Individual Plaintiffs must assert that "it is reasonably probable that the challenged action will threaten their concrete interests." *Id.* at 969-70. Here, it is reasonably probable that Defendants' alleged procedural failures will adversely affect Individual Plaintiffs' interests, as such alleged injury may have been prevented through proper consultation and analysis. At this stage, this is sufficient.

Thus, Plaintiffs have established a procedural injury in fact with respect to these two claims. In this context, "[o]nce a plaintiff has established an injury in fact . . . the causation and redressability requirements are relaxed." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482-83 (9th Cir. 2011) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir.2001)). A plaintiff "must show only that they have a procedural right that, if exercised, *could* protect their concrete interests . . . ." *Id.* (citations omitted). Here, proper consultation and analysis may redress Plaintiffs' alleged injuries caused by the alleged failure to follow those procedures. Thus, Individual Plaintiffs satisfy the causation and redressability requirements.

For the foregoing reasons, the Court finds that Individual Plaintiffs have sufficiently pleaded standing with respect to their NHPA and NEPA claims.

  **2.**   **The Individual Plaintiffs Properly Allege Standing to Maintain Their FLPMA Claim**

Plaintiffs maintain that Defendants' acts, which allegedly allowed permanent impairment and unnecessary degradation of the lands in violation of FLPMA, caused them substantive injury. Similar to the procedural injuries discussed above, because the Individual Plaintiffs allege a cultural and religious interest in the land and that they reside in the affected areas, at this stage of the litigation, they have shown "'a connection to the area of concern sufficient to make credible the connection that the person's life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded.'" *W. Watersheds*, 632 F.3d at 484.

Further, the adverse cultural and religious consequences are fairly traceable to Defendants' action, if indeed, those actions have caused impairment of and degradation to the land. Finally, Plaintiffs' request for injunctive relief, including that Defendants comply with the provisions of FLPMA, is sufficient to establish redressability.

For the foregoing reasons, the Court finds that Individual Plaintiffs have sufficiently pleaded standing with respect to their FLPMA claim.

For the aforementioned reasons, the Court finds that the Individual Plaintiffs have standing at this point in the action and, therefore, the Court has subject matter jurisdiction in the case between the Individual Plaintiffs and the Defendants.

### D.  LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE ADVISORY COMMITTEE'S STANDING

La Cuna is an organization dedicated to protecting sacred sites from Needles, California to Yuma, Arizona. (Compl. ¶ 1.) Here, the Complaint does not specifically state that La Cuna is suing on its own behalf. Indeed, the Complaint alleges that La Cuna is "comprised of 15 indigenous and culturally aware individuals who are dedicated to physically protecting the Blythe Giant Intaglios, other geoglyphs, and several hundred sacred sites . . . ." (Compl.¶ 1.) Accordingly, Plaintiffs' allegations lead the Court to conclude that La Cuna is suing on behalf of its members, such that it must sufficiently plead that: (1) its members would have had standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose and (3) neither the claim

asserted nor the relief requested requires the participation of individual members of the lawsuit. *See W. Watersheds*, 632 F. 3d at 482-83.  Moreover, as stated above, with respect to the first element, La Cuna must provide "specific allegations establishing that at least one identified member has suffered or would suffer harm[;] . . . generalized harm will not alone support standing." *Id.* (internal citations omitted).

La Cuna fails to satisfy the first element.  La Cuna asserts that its members are "indigenous," "culturally aware," and dedicated to protecting several hundred sites between Needles, California and Yuma, Arizona. (Compl. ¶ 1.) Such allegations fail to point to "at least one *identified* member [who] has or would suffer harm." *W. Watersheds*, 632 F. 3d at 482-83 (emphasis added). Moreover, beyond failing to identify even one of its members, La Cuna fails to assert that any of its member reside in the affected area.  Thus, with respect to a procedural injury, La Cuna fails to establish a "concrete interest" and with respect to a substantive injury, La Cuna fails to show that at least one of its members has "'a connection to the area of concern.'" *W. Watersheds*, 632 F.3d at 484.

In light of the foregoing, the Court finds that La Cuna has not properly alleged organizational standing.  Accordingly, Defendants' 12(b)(1) Motion to Dismiss is **GRANTED** as to La Cuna.[4]

### E.  CALIFORNIANS FOR RENEWABLE ENERGY'S STANDING

Plaintiffs allege that CARE is "a non-profit organization formed to promote public education concerning the responsible development of renewable energy and in the preservation of an respect for Native American culture." (Compl. ¶ 2.)  The Complaint contains no other information about CARE or its members.  Thus, for the same reasons

---

[4] To the extent Plaintiffs argue they "are not required to provide substantial detail about the members['] harm at this stage of the pleadings [and that the ] level of detail that Federal Defendants seek is appropriate for lengthier declarations at subsequent stages of litigation, (Opp'n at 5), the Court finds this unavailing.  Plaintiffs have simply not alleged sufficient *facts* to support organizational standing, which is certainly a requirement at the pleading stage.  Indeed, without proper standing allegations in the Complaint, Plaintiffs' "provision of affidavits and declarations supporting organizational standing at the summary judgment stage [will be] ineffectual." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

that La Cuna fails to establish organizational standing – namely, that it fails to allege any facts about its members – CARE also fails to establish organizational standing.

## V. CONCLUSION

In light of the foregoing, the Court finds that, at this stage of the litigation, the Individual Plaintiffs plead facts sufficient to establish standing as to their NHPA, NEPA, and FLPMA claims. Conversely, the Court finds that the Organizational Plaintiffs fail to plead facts sufficient to establish standing as to their NHPA, NEPA, and FLPMA claims. Accordingly, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED** as to the Individual Plaintiffs and **GRANTED** with leave to amend as to the Organizational Plaintiffs. If they so choose, Plaintiffs may file a first amended complaint to correct the deficiencies discussed herein. Plaintiffs shall file any amendment within thirty (30) days of the date of this Order.

Additionally, because the Court has granted leave to amend with respect to the Organizational Plaintiffs' standing, it is yet to be determined whether the Court has jurisdiction to decide any substantive issues pertaining to the Organizational Plaintiffs. Thus, until such time as the issue of standing has been resolved as to all Plaintiffs, the Court declines to rule on the substantive issues. Defendants Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is therefore **DENIED without prejudice**. If Plaintiffs fail to amend their Complaint within the allotted time, the Organizational Plaintiffs' claims will be dismissed with prejudice and Defendants may then refile their Motion as to the Individual Plaintiffs' claims.

Finally, pursuant to Plaintiff's representation in their Opposition, the Court hereby **DISMISSES without prejudice** Plaintiffs' fifth claim for violation of the NAGPRA.

**IT IS SO ORDERED.**

October 24, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE