O

1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 LA CUNA DE AZTLAN SACRED SITES PROTECTION CIRCLE | Case No. 2:11-cv-00395-ODW (OPx) |
| 12 ADVISORY COMMITTEE; CALIFORNIAS FOR RENEWABLE | **ORDER GRANTING DEFENDANTS' MOTIONS TO** |
| 13 ENERGY; ALFREDO ACOSTA FIGUEROA; PHILLIP SMITH; | **DISMISS [54, 57]** |
| 14 PATRICIA FIGUEROA; RONALD VAN FLEET; CATHERINE OHRIN- | |
| 15 GREIPP; RUDY MARTINEZ MACIAS; and GILBERT LEIVAS, | |
| 16 | |
| 17                    Plaintiffs, | |
|          v. | |
| 18 UNITED STATES DEPARTMENT OF | |
| 19 THE INTERIOR; KEN SALAZAR, in the official capacity of Secretary of the | |
| 20 United States Department of the Interior; UNITED STATES BUREAU OF LAND | |
| 21 MANAGEMENT; ROBERT ABBEY, in the official capacity of Director of the | |
| 22 United States Bureau of Land Management; TERI RAML, in the | |
| 23 official capacity of District Manager of the California Desert District of the | |
| 24 United States Bureau of Land Management; ROXIE TROST, in the | |
| 25 official capacity of Field Manager of the Barstow Field Office of the United States | |
| 26 Bureau of Land Management; and CHEVRON ENERGY SOLUTIONS, | |
| 27                   Defendants. | |
| 28 | |

## I.   INTRODUCTION

Before the Court are Defendants' two concurrently filed motions: (1) Defendants Ken Salazar, in his official capacity as Secretary of the Interior; United States Bureau of Land Management ("the Bureau"); Robert Abbey, in his official capacity as Director of the Bureau; Teri Raml, in her official capacity as District Manager of the Bureau, California Desert Division; Roxie Trost, in her official capacity as Field Manager of the Bureau, Barstow Field Office; and the United States Department of the Interior's (collectively, "Federal Defendants") Motion to Dismiss Plaintiffs' Second Amended Compliant ("SAC") (ECF No. 54.); and (2) Defendant Chevron Energy Solutions Company's ("Chevron") Motion to Dismiss Plaintiff's SAC (ECF No. 57.).

Plaintiffs, La Cuna De Aztlan Sacred Sites Protection Circle Advisory Committee ("La Cuna"); CAlifornians for Renewable Energy ("CARE") (collectively, "Organizational Plaintiffs"); Alfredo Acosta Figueroa; Phillip Smith; Patricia Figueroa; Ronald Van Fleet; and Catherine Ohrin-Greipp (collectively, "Individual Plaintiffs" and collectively with Organizational Plaintiffs, "Plaintiffs") filed a Consolidated Opposition on June 11, 2012.  (ECF No. 61.)  Defendants filed their respective Replies on June 18, 2012.  (ECF Nos. 64, 65.)

For the following reasons, Defendants' Motions to Dismiss are **GRANTED**.[1]

## II.   FACTUAL BACKGROUND[2]

This lawsuit arises out of Plaintiffs' challenges to Defendants' actions in connection with a solar-electricity generation project called the Chevron Energy Solutions Lucerne Valley Solar Project (the "Project").  (SAC ¶ 7.)  Because the

---

[1] Having considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

[2] The Court had occasion to recount the factual background of this case in its March 21, 2012 Order. Nevertheless, the Court reiterates the pertinent facts here for context.

Project is located on federal land, Chevron was required to obtain certain approvals from the Bureau prior to constructing and operating the Project.

In October 2010, Federal Defendants granted the requisite approval, which included an amendment to the existing California Desert Conservation Area ("CDCA") Plan and a right-of-way authorization. (*Id.*) Plaintiffs allege that in granting these approvals, Defendants failed to comply with several federal laws. Specifically, Plaintiffs allege that Defendants: (1) failed to consult with Plaintiffs regarding the Project as required under the National Historic Preservation Act ("NHPA"), the Administrative Procedure Act ("APA"), and the American Indian Religious Freedom Act ("AIRFA"); (2) failed to "conduct an adequate analysis of the cumulative impacts, failed to prepare a programmatic environmental impact statement ("PEIS"),[3] failed to adequately identify and evaluate the impact on the affected cultural environment, and failed to conduct an adequate analysis of alternatives to the Project" in violation of the National Environmental Policy Act ("NEPA"); (3) allowed permanent impairment of the lands affected by the Project and unnecessary degradation of the lands in violation of the Federal Land Policy and Management Act of 1976 ("FLPMA"); and (4) authorized solar-electricity generation activities on the affected lands "in a manner that will impose a substantial burden on Plaintiff's exercise of their religion," in violation of the Religious Freedom Restoration Act ("RFRA"). (SAC ¶¶ 8A–E.)

As a result of these contentions, Plaintiffs filed a Complaint in this Court on January 13, 2011, for (1) violation of consultation rights pursuant to NHPA and AIRFA; (2) violation of NEPA; (3) violation of NEPA; (4) violation of FLPMA;

---

[3] Other courts have alternatively referred to a "programmatic environmental impact statement" as a "comprehensive impact statement," *Kleppe v. Sierra Club*, 427 U.S. 390, 409 (1976), a "cumulative EIS," *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 469 (9th Cir. 1986), or a "generic environmental impact statement," *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 539 F.2d 824, 828 (2d Cir. 1976). For simplicity, the Court will use the term "programmatic environmental impact statement," or "PEIS," throughout.

1   (5) violation of RFRA; and (6) violation of public-participation rights.  On

2   October 24, 2011, this Court issued an Order granting in part and denying in part the

3   Federal Defendants' motion to dismiss (in which Chevron joined), holding that the

4   individual Plaintiffs had standing to proceed, but that La Cuna and CARE failed to

5   sufficiently allege organizational standing.  (ECF No. 38.)  The Court granted

6   Plaintiffs leave to amend to allege organizational standing and declined to rule on the

7   substantive issues contained in the motion pending resolution of the standing issue.

8   (*Id.*)

9        Plaintiffs filed their FAC on November 23, 2011.  (ECF No. 41.)  Federal

10  Defendants and Chevron each moved to dismiss on December 12, 2011.  (ECF Nos.

11  42, 45.)  While Defendants no longer challenged Plaintiffs' standing, they sought

12  dismissal of Plaintiffs' first, third, and fifth claims for violations of AIRFA, NEPA,

13  and RFRA.  (*See generally* ECF Nos. 42, 45.)  Ultimately, the Court granted

14  Defendants' Motions to Dismiss in their entirety, allowing Plaintiffs leave to amend

15  their first, third, and fifth claims.  (ECF No. 52.)

16       On April 4, 2012, Plaintiffs filed a SAC.  (ECF No. 53.)  On April 23, 2012,

17  Federal Defendants and Chevron once again each moved to dismiss.  (ECF Nos. 54,

18  55, 57.)  While both Federal Defendants and Chevron again seek to dismiss Plaintiffs'

19  first, third, and fifth claims, Federal Defendants alone additionally seek to dismiss

20  Plaintiffs' fourth claim for violation of FLPMA.  (ECF No. 55.)

## III.   LEGAL STANDARD

22       Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

23  theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

24  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

25  need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short

26  and plain statement—to survive a motion to dismiss for failure to state a claim under

27  Rule 12(b)(6).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P.

28  8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations must be

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

  *Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

  When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

  As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*

/ / /

/ / /

1   *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d

2   1122, 1127 (9th Cir. 2000).

3                                    **IV.   DISCUSSION**

4          Defendants move to dismiss Plaintiffs' first claim to the extent that it relies on

5   AIRFA.  (Fed. Defs.' Mot. 2.)  Defendants also seek dismissal of Plaintiffs' third

6   claim for violation of NEPA and fifth claim for violation of RFRA.  (*Id.*)  The Federal

7   Defendants alone move to dismiss Plaintiffs' fourth claim for violation of FLPMA.

8   (Fed. Defs.' Mot. 4–5.)  The Court considers each in turn.

9   **A.     Plaintiff's AIRFA Claim**

10          The Court's March 21, 2012 Order granting Defendants' motions to dismiss

11   dismissed Plaintiff's first claim to the extent that it relied on AIRFA.  Plaintiffs' SAC

12   removed all but one reference to AIRFA, leaving NHPA as the sole basis for relief

13   under their first claim.  Plaintiffs acknowledged to Defendants on April 16, 2012, that

14   AIRFA does not provide a basis for relief, and they do not oppose dismissal of their

15   first claim to the extent it still relies on AIRFA.  (Fed. Defs.' Mot. 6., Opp'n 2.)

16   Therefore, the Court hereby **STRIKES** the remaining reference to AIRFA in page 15,

17   line 9 of Plaintiffs' SAC.

18   **B.     Plaintiff's Third Claim for Violation of NEPA and the APA**

19          Plaintiffs' third claim alleges that Defendants violated NEPA by failing to

20   prepare a PEIS for the Chevron Project to analyze the cumulative impacts of the

21   project in relation to other similar projects prior to the Program's approval.  (SAC

22   ¶ 31.)  According to Plaintiffs, a PEIS is required if there are several proposals that

23   will have "cumulative or synergistic environmental impacts upon [the] region."  (SAC

24   ¶¶ 27, 28 (citing *Kleppe v. Sierra Club*, 427 U.S. 390 (1976); 40 C.F.R. § 1502.4(b)).)

25   Consequently, Plaintiffs seek an order declaring that the Project's approval was illegal

26   under NEPA and compelling Defendants to prepare a PEIS prior to final approval of

27   the Project.  (SAC ¶ 31,  Prayer ¶ B.)

28   ///

Defendants respond that the decision whether to prepare a PEIS is unreviewable under the APA because the decision is not a discrete agency action the BLM is required to take under NEPA, and in any event, Plaintiffs' claim is not yet ripe for review.  (Fed. Def's Mot. 7, 9–10; Chevron Mot. 6.)  Defendants' position largely hinges on the assertion that the BLM has discretion to choose whether to prepare a PEIS.  (Fed. Def's Mot. 8.)  The Court agrees.

Under NEPA, government agencies retain the discretion to decide whether to prepare a PEIS, because courts lack the resources to determine when one is necessary.  *Kleppe*, 427 U.S. at 412.  Absent evidence that an agency has acted arbitrarily in failing to prepare an impact statement, courts must defer to the agency's decision.  *Id*.  ("Absent a showing of arbitrary action, we must assume that the agencies have exercised this discretion appropriately.")  There is no evidence suggesting the BLM acted arbitrarily here.

Plaintiffs cite 40 C.F.R. § 1502.4(b) to argue that Defendants' failure to prepare a PEIS was "arbitrary and capricious."  (SAC ¶ 27.)  But this citation is unavailing: that section states that EISs (as opposed to PEISs) "*may* be prepared, and are *sometimes* required," without specifying which instances necessitate an EIS.  40 C.F.R. § 1502.4(b) (emphasis added).  Not only does this regulation underscore a standard of deference to agency action, it also does nothing to further Plaintiffs' NEPA claim regarding a lack of a *PEIS* because it speaks only to preparation of an *EIS*—which Defendants have already prepared.  (Fed. Defs.' Mot. 8; Tustin Decl. ¶ 3 & Ex. B; Opp'n 3.)

Plaintiffs claim in turn, however, that Defendants' EIS is insufficient under NEPA because Defendants have not also created a *programmatic* EIS, which would address both the Chevron Project and other solar energy projects in the region.  (SAC ¶¶ 28, 30.)  But the Government needs only exercise its discretion in determining whether to prepare a PEIS where the projects are "'connected,' 'cumulative,' or 'similar' actions under the regulations implementing NEPA."  *Native*

1    *Ecosystems Council v. Dombeck*, 304 F.3d 886, 893–94 (9th Cir. 2002).  Rather than

2    pleading details to support the allegation that the Chevron Project is "connected,

3    cumulative, or similar" to other projects, however, Plaintiffs merely conclude that the

4    Project is part of the "priority" or "fast track" solar-energy projects in the area.  (SAC

5    ¶ 28.)

6          Although Plaintiffs' SAC describes "priority" or "fast track" programs in more

7    detail than the FAC, this does nothing to clarify whether the Project is "connected,

8    cumulative, or similar."  (*Id.*)  Additionally, while Plaintiffs do claim that the projects

9    will have "a variety of cumulative impacts," such as "adverse impacts on Native

10   American cultural resources, land use, and plants and animals," the SAC is silent as to

11   whether this Project is connected or similar to other projects.  (*Id.*)  Absent facts that

12   satisfy these two requirements, Plaintiffs fail to plead that the Project necessitates

13   preparation of a PEIS.  Thus, even if NEPA requires PEISs for projects that are

14   connected, cumulative, or similar, Plaintiffs have not sufficiently alleged this

15   threshold pleading requirement.

16         Lastly, Plaintiffs contend that they do not dispute the adequacy of Solar Energy

17   Development PEIS (Opp'n 5); rather, they claim that the PEIS remains justiciable

18   because "agencies are not to undertake in the interim any major federal action covered

19   by the program" before completion of a PEIS.  (*Id.*)  But Plaintiffs fall short of

20   pleading why this might be the case, as § 1506.1(c)(2) includes a clear exception to

21   the rule that every agency project must be accompanied by an existing PEIS.  That

22   section states that the action may go forward if it is "accompanied by an adequate

23   environmental impact statement."  40 C.F.R. § 1506.1(c)(2).  Plaintiffs can hardly

24   dispute the mere existence of the Chevron Project EIS or the Record of Decision

25   regarding the Project (*see* Fed. Defs.' Rep. 4; Tustin Decl. ¶¶ 2, 3 & Exs. A, B), and

26   Plaintiffs fail to plead that either the Chevron Project EIS or the Record of Decision

27   are *in*adequate for purposes of 40 C.F.R. § 1506.1(c)(2).  Thus, because Plaintiffs do

28   / / /

1  not show that these existing documents are not adequate under § 1506.1(c)(2),

2  Plaintiffs' claim that the Project cannot go forward without a PEIS fails.

3        Given that Plaintiffs have not pleaded enough facts suggesting the projects are

4  connected to, similar to, or cumulative of other solar-energy projects in the region,

5  Plaintiffs fail to plead that Defendants must prepare a PEIS.  Further, to the extent that

6  Plaintiffs claim they are not challenging the adequacy of the PEIS, but rather its

7  potential implications for the Chevron Project (Opp'n 5), this assertion does not

8  rescue Plaintiffs' claim.  Plaintiffs do not plead that the existing EIS or Record of

9  Decision are inadequate such that proceeding with the Project without a PEIS is

10 prohibited under § 1506.1(c)(2).  Defendants' Motions to Dismiss are therefore

11 GRANTED with respect to Plaintiff's third claim for violation of NEPA.  In light of

12 Plaintiffs' multiple failed attempts to amend, Plaintiffs' third claim is **DISMISSED**

13 **WITH PREJUDICE**.

14 **C.    Plaintiffs' Fourth Claim for Violation of FLPMA**

15       Plaintiffs aver that the Project is located on federal public land within a region

16 known as the California Desert Conservation Area.  (SAC ¶ 37.)  The CDCA is

17 subject to Federal Land Policy and Management Act, which entrusts the United States

18 Secretary of the Interior with creating a "comprehensive, long-range plan for the

19 management, use, development, and protection of . . . the CDCA."  43 U.S.C.

20 § 1781(d).

21       Alleging that Defendants are out of compliance with the CDCA and have

22 violated FLPMA, Plaintiffs argue that Defendants have failed to "take all action

23 necessary" to protect the Project site's land from "unnecessary or undue degradation."

24 (SAC ¶ 38.)  Plaintiffs contend that approval of the Project without first taking these

25 precautions was "arbitrary" and "capricious" conduct that constituted an abuse of

26 discretion by Defendants.  (*Id.*)  To ensure compliance with FLPMA, Plaintiffs seek

27 an injunction preventing Defendants from moving forward with the Project until the

28 Court determines Defendants have satisfied FLPMA's provisions.  (SAC at 16.)

1    Federal Defendants respond that Plaintiffs lack any facts to support their claim.

2    (Fed. Defs.' Rep. 5.)  Defendants maintain that instead of alleging any factual basis

3    for their claim, Plaintiffs merely regurgitate FLPMA's language in an attempt to state

4    a claim.  (*Id.*)  The Court agrees.

5    Plaintiffs rely on § 1781(f) to implicate Defendants in unduly degrading federal

6    land.  (SAC ¶ 38.)  Section 1781(f) designates that public land in the CDCA may be

7    subject to measures that protect the scenic, scientific, and environmental values of the

8    land.  (SAC ¶ 36.)  But this section, titled "Applicability of mining laws," primarily

9    concerns mining-related pollution of natural resources within the CDCA.  (*Id.*)

10   Considering this section nevertheless, the Court finds that Plaintiffs fail to plead in

11   what ways Defendants have not complied with this measure.  At no point do

12   Plaintiffs' allegations surpass general and unsubstantiated pronouncements that

13   Defendants have failed to "take all action necessary to prevent . . . undue

14   degradation."  (SAC ¶ 38.)   Thus, Plaintiffs have not sufficiently pleaded a violation

15   of FLPMA by Defendants.

16   Although Plaintiffs contend that defendants have violated FLPMA by building

17   solar-energy facilities on Class L (Limited Use) lands (SAC ¶ 8D), Plaintiffs have not

18   provided any additional facts that demonstrate how the Project is out of compliance

19   with the CDCA Plan, as explained above.  In fact, Defendants demonstrate that the

20   Project location encompasses Class M (Moderate Use) land, which expressly permits

21   "a wide variety of uses," including "energy."  (Tustin Decl. ¶ 5 & Ex. D, at 8.)

22   Merely repeating the language of § 1781(f) is insufficient to state a claim for relief.

23   (SAC ¶¶ 36, 38.)  Plaintiffs' Opposition does not remedy this defect, but merely

24   reasserts that Plaintiffs are "concerned about the 'permanent impairment of the lands."

25   (Opp'n 6.)

26   Owing to Plaintiffs' complete lack of specificity demonstrating adverse impacts

27   on the land, this Court cannot discern a plausible claim for relief.  Accordingly,

28   / / /

10

1   Plaintiff's fourth claim for violation of FLPMA is **DISMISSED WITHOUT**
2   **PREJUDICE**.

3   **D.      Plaintiff's Fifth Claim for Violation of the RFRA**

4          Plaintiffs' fifth claim alleges that Defendants impose a substantial burden on
5   Plaintiffs' free exercise of their religion because the Chevron Project interferes with
6   "access to sites [and] use and possession of sacred objects" guaranteed by the CDCA
7   Plan, thereby denying Plaintiffs a government benefit.  (SAC ¶ 46.)  Although
8   Defendants state that there is an existing right of way meant to allow Plaintiffs access
9   to the site, Plaintiffs aver that Defendants are violating the right of way by denying
10  Plaintiffs access to the site.  (Opp'n 8, 9.)  Plaintiffs also claim that the Project forces
11  members of the Tribe to choose between practicing their religion or potentially
12  incurring civil or criminal penalties for trespass.  (SAC ¶ 44.)  In response, Defendants
13  contend that (1) the BLM will accommodate Plaintiffs' religious practices on the site
14  "to the extent practicable"; and (2) Plaintiffs never alerted Defendants of the site's
15  significance, and therefore Defendants did not have an opportunity to consider the
16  potential effects on Plaintiffs.  (Fed. Defs.' Mot. 17–18.)

17         In *Navajo Nation v. United States Forest Services*, 535 F.3d 1058, 1070 (9th
18  Cir. 2008), the Ninth Circuit stated that a burden is only "substantial" if it forces an
19  individual (1) to choose between following his or her religion and receiving a
20  governmental benefit, or (2) to act contrary to his or her religion under the threat of
21  civil or criminal sanctions.  This Court notes that in *Navajo Nation*, the only effect of
22  the defendants' project on the plaintiffs was a subjective one, because the project at
23  issue merely decreased the "spiritual fulfillment" of the plaintiffs' religious practice.
24  535 F.3d at 1070.  Because the tribe experienced only a subjective effect on its
25  religious practice, it failed to show that it had been either forced to choose between
26  following its religion and receiving a government benefit or had been coerced to act
27  contrary to its religion under threat of punishment.  *Id.*  Relying on Supreme Court
28  precedent, the Ninth Circuit found that no substantial burden existed.  *Id.*

1    Similarly, Plaintiffs here do not plead that the Project will have anything but a

2    subjective effect on their religion.  Hence, Plaintiffs also fail to establish a substantial

3    burden.

4    ### a.  Denial of government benefit

5    The Plaintiffs' SAC does not plead facts that show Plaintiffs have been forced

6    to choose between receiving government benefits and practicing their religion.

7    Plaintiffs cite the general language of the CDCA plan—which provides for "access to

8    sites, use and possession of sacred objects, and the freedom to worship through

9    ceremonies and traditional rights"—but fail to point to a specific benefit that they are

10   losing.  (SAC ¶ 46).  Furthermore, Plaintiffs do not plead that this is the type of

11   government benefit contemplated under RFRA.  (Opp'n 5.)

12   In *Sherbert v. Verner*, a woman whose religion prevented her from working on

13   Saturdays was denied unemployment compensation because she would not accept a

14   job that required her to work on Saturdays.  374 U.S. 398, 403–04 (1963).  There, the

15   plaintiff's receipt of a tangible benefit—an unemployment check—hinged directly on

16   whether she violated her religious principles.  *Id.*  The Supreme Court held that

17   denying the plaintiff compensation imposed a substantial burden because she was

18   being forced to abandon her religious principles in order to receive the benefit.  *Id.*

19   Here, the Plaintiffs do not plead that they must abandon their religious

20   principles or else forfeit a benefit.  There is no evidence that Defendants have

21   pressured Plaintiffs to make any choice between receiving a benefit and practicing

22   their religion, as was the case in *Sherbert*.  In fact, the "benefit" Plaintiffs claim is

23   conferred upon them—access to and use of the land—is one that is conferred on the

24   public as a whole.  Plaintiffs do not identify a tangible benefit, personal to them, the

25   receipt of which hinges directly on whether or not Plaintiffs abandon their personal

26   religious principles.  Alleging that the Project impedes Plaintiff's access to a religious

27   site is simply not enough to suggest that the Plaintiffs are deprived of the kind of

28   benefit protected by RFRA.  As discussed above, Class M lands are intended to have a

1  variety of uses while to the extent possible continuing to provide access to the public.

2  (Tustin Decl. ¶ 5 & Ex. D at 8.)  Thus, Plaintiffs cannot defend this alleged

3  government benefit.

4  **b.  Compulsion to act contrary to religious briefs**

5  Neither do Plaintiffs demonstrate how the Project forces them to act contrary to

6  their religious beliefs.  The standard set forth in *Navajo Nation* requires that for a

7  substantial burden to exist, the plaintiff must be coerced to violate his or her religious

8  beliefs by the threat of civil or criminal sanctions.  535 F.3d at 1070.  Emphasizing the

9  difficulty in finding a substantial burden, the Ninth Circuit stressed that nothing short

10 of the burden described in *Sherbert*, as discussed above, would qualify as "substantial."

11 *Id*.

12 Plaintiffs claim that their denial of access to the Project site—which happens to

13 cover part of the Salt Song Trails—constitutes pressure to violate their religious

14 practices because they face the threat of punishment for trespassing.  (SAC ¶ 44.)

15 Notably, however, Plaintiffs do not demonstrate that they have in fact been barred

16 from the Project site or received actual threats of arrest.  Plaintiffs' claim therefore

17 appears unduly speculative to support a RFRA claim on this basis.

18 Plaintiffs further state that without access to these trails, the Tribe cannot

19 practice their religion as it has for centuries.  (*Id.*)  But denial of access to a religiously

20 significant site is not one of the factors under the substantial burden test.  Even if it

21 were, Plaintiffs do not address the fact that they are not being forced to do something

22 that specifically contradicts their religious beliefs.  They are not forced to act contrary

23 to and relinquish their religion—no one is forcing Plaintiffs to trespass.  Rather,

24 Plaintiffs stretch the holding of *Snoqualmie Indian Tribe v. Federal Energy*

25 *Regulatory Commission* to infer that permanent denial of access to a religious site

26 coerces Plaintiffs to violate the tenets of their religion.  545 F.3d 1207 (9th Cir. 2008).

27 But the Court is not prepared to make that leap.

28 / / /

1    In *Snoqualmie*, the Ninth Circuit found that interfering with the ability of a tribe

2  to practice its religion is different from coercing the tribe to exercise its religion under

3  fear of civil or criminal sanction, and therefore does not constitute a substantial

4  burden.  545 F.3d at 1214.  The same conclusion holds here.  Repeating vague and

5  unsubstantiated allegations that Plaintiffs might face future civil or criminal

6  consequences for trespassing does not make Plaintiffs' claim any more convincing.

7  (SAC ¶ 44; Opp'n 5.)  To the extent that Plaintiffs request leave to amend to prove

8  that the right of way to the site is violated by denial of access (Opp'n 9), this Court

9  has already demonstrated that denial of access is irrelevant to establishing a

10  substantial burden pursuant to RFRA, and Plaintiffs have had ample opportunity to

11  plead this in previous complaints.  Thus, further leave to amend would be fruitless.

12  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that courts may deny leave to

13  amend following "repeated failure to cure deficiencies by amendments previously

14  allowed"); *see also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655

15  F.3d 1039, 1058 (9th Cir. 2011) (affirming that district courts have "broad discretion"

16  to grant or deny leave to amend).  Thus, Defendants' motion to dismiss the fifth claim

17  is **GRANTED WITH PREJUDICE**.

18                                   **V.    CONCLUSION**

19    For the reasons discussed above, the Court **GRANTS** Defendants' Motion to

20  Dismiss.  Plaintiffs' first claim is **STRICKEN** insofar as it relies on AIRFA.

21  Plaintiffs' third and fifth claims are **DISMISSED WITH PREJUDICE** in their

22  entirety.  Plaintiffs' fourth claim is **DISMISSED WITHOUT PREJUDICE**.  As to

23  the fourth claim, Plaintiffs may file an amended complaint within 14 days from the

24  date of this Order, provided Plaintiffs can—in good faith—allege additional facts

25  / / /

26  / / /

27  / / /

28  / / /

necessary to state viable causes of action for FLPMA.  If Plaintiffs fail to file an amended complaint within 14 days, the Court will dismiss this claim with prejudice.

**IT IS SO ORDERED.**

July 13, 2012

_____

**HON. OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**